**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| STEPHANIE HAWTHORNE,<br><br>Plaintiff,<br><br>v.<br><br>OAS ACQUISITION, LLC d/b/a ARISTA AVIATION SERVICES GROUP, LLC; and ARISTA AVIATION SERVICES, LLC d/b/a UNITED AERO GROUP,<br><br>Defendants. | CIVIL ACTION NO.:<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff Stephanie Hawthorne ("Plaintiff" or "Ms. Hawthorne"), by and through undersigned counsel, files this Complaint against Defendants OAS Acquisition, LLC ("OAS") d/b/a Arista Aviation Services Group, LLC and Arista Aviation Services, LLC d/b/a United Aero Group ("Arista") (OAS and Arista collectively, "Defendants"), and alleges as follows:

## I. NATURE OF THE ACTION

1. This is an action for legal and equitable relief to redress unlawful sexual harassment, hostile work environment, sex discrimination, retaliation, and age discrimination in employment under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"); the Civil Rights Act of 1991, 42 U.S.C. § 1981a; and the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.* ("ADEA").

2. Ms. Hawthorne worked for Defendants and their predecessors for nearly ten years as a Quality Records Clerk without a single disciplinary action. Within weeks of becoming her direct supervisor in July 2023, Neilson Young began texting her to ask whether she was interested

in him, commenting on her body, describing his sexual arousal, and ultimately sending her nude photographs of himself displaying his genitals.

3. Ms. Hawthorne did not welcome or reciprocate Young's advances. Young responded by turning openly hostile, berating and cursing at her in front of her coworkers. When Ms. Hawthorne complained to Defendants' Human Resources Department about the harassment and discrimination she was enduring—at least three times in writing—Defendants opened no investigation. Instead, Human Resources told Young about her complaints, and Young punished her after each one.

4. Young then wrote Ms. Hawthorne up for the first time in her career, directed her to train a 25-year-old female employee to perform every one of her job duties, and, on June 18, 2024, terminated her employment in front of her coworkers under the label of a "layoff" while being ridiculed in front of her coworkers by her harassing supervisor. Ms. Hawthorne, then 52 years old, was replaced by the 25-year-old employee she had been forced to train, who assumed her position and her accounts.

## II. JURISDICTION AND VENUE

5. This Court has original subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343(a)(4), 42 U.S.C. § 2000e-5(f)(3), and 29 U.S.C. § 626(c)(1), because Plaintiff's claims arise under the laws of the United States.

6. This Court is authorized to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202, and injunctive and other equitable relief under 42 U.S.C. § 2000e-5(g) and 29 U.S.C. § 626(b).

7. Venue is proper in the Middle District of Alabama under 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1391(b) because the unlawful employment practices alleged herein were

committed at Defendants' facility located at 690 Aviation Boulevard, Enterprise, Coffee County, Alabama; upon information and belief, the employment records relevant to those practices are maintained and administered in this District; Plaintiff would have continued working in this District but for the unlawful employment practices alleged herein; and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

8. Assignment to the Southern Division is proper because the events giving rise to this action occurred in Coffee County, Alabama, which lies within the Southern Division of this District. *See* 28 U.S.C. § 81(b)(2).

## III. PARTIES

9. Plaintiff Stephanie Hawthorne is a woman over the age of nineteen who resides in Dale County, Alabama. At all times relevant to this action, Plaintiff was over forty years of age. She was 52 years old when Defendants terminated her employment on June 18, 2024.

10. At all times relevant to this action, Plaintiff was an "employee" of Defendants within the meaning of 42 U.S.C. § 2000e(f) and 29 U.S.C. § 630(f).

11. Defendant OAS Acquisition, LLC, now known as Arista Aviation Services Group, LLC, is a Delaware limited liability company with its principal office at 50 Union Circle, Wheaton, Illinois 60187. OAS does business in the State of Alabama, including at the Enterprise, Alabama, facility where Plaintiff worked.

12. Defendant Arista Aviation Services, LLC is an Alabama limited liability company that does business as "United Aero Group" and operates an aviation services facility at 690 Aviation Boulevard, Enterprise, Alabama 36330, where Plaintiff worked.

13. Upon information and belief, OAS/ Arista Aviation Services Group, LLC, Arista Aviation Services, LLC, and United Aero Group ("Defendants") operate as one enterprise and Plaintiff was at all relevant times employed by both OAS and Arista.

14. At all times relevant to this action, each Defendant was an "employer" within the meaning of 42 U.S.C. § 2000e(b) and 29 U.S.C. § 630(b) and was engaged in an industry affecting commerce. Upon information and belief, Defendants employed more than 125+ employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

15. Defendants are Plaintiff's joint employer and/or constitute a single, integrated enterprise for purposes of Title VII and the ADEA. Upon information and belief, Defendants share common ownership and financial control, common management, interrelated operations, and centralized control of labor relations and personnel decisions, including human resources functions, hiring, discipline, and termination decisions affecting employees at the Enterprise facility. Each Defendant is therefore liable for the unlawful employment practices alleged herein.

16. At all times relevant to this action, Neilson Young and Human Resources Manager Anna Wright were Defendants' employees and agents acting within the line and scope of their employment and agency.

## IV. ADMINISTRATIVE EXHAUSTION

17. On December 12, 2024, and within 180 days of Defendants' termination of her employment, Plaintiff timely filed a Charge of Discrimination against Defendants with the U.S. Equal Employment Opportunity Commission ("EEOC"), EEOC Charge No. 425-2025-00451 (the "Charge"), alleging discrimination based on sex and age, sexual harassment, hostile work environment, and retaliation. A true and correct copy of the Charge is attached as **Exhibit A**.

18. The Charge named both OAS and Arista as respondents.

19. Because the hostile work environment alleged herein constituted a single unlawful employment practice that continued through Plaintiff's termination on June 18, 2024, and at least one act contributing to that hostile work environment occurred within 180 days before the Charge was filed, the Charge was timely as to the entire period of the hostile work environment.

20. On August 5, 2026, the EEOC issued Plaintiff a Notice of Right to Sue. A true and correct copy of the Notice of Right to Sue is attached as **Exhibit B**.

21. Plaintiff filed this Complaint within ninety (90) days of her receipt of the Notice of Right to Sue, and more than sixty (60) days after filing the Charge, as required by 42 U.S.C. § 2000e-5(f)(1) and 29 U.S.C. § 626(d)–(e).

22. All conditions precedent to the filing of this action have been performed, have occurred, or have been waived.

## V. FACTUAL ALLEGATIONS

### A. Ms. Hawthorne's Nearly Twenty-Year Employment History

23. On or about November 14, 2014, Ms. Hawthorne began working at the Enterprise, Alabama, facility now operated by Defendants as a Quality Records Clerk.

24. Ms. Hawthorne remained employed at the facility for 10 years, through multiple changes in corporate ownership. Over time, her responsibilities grew to include managing quality records for the aircraft and accounts assigned to her.

25. Throughout her employment, Ms. Hawthorne performed her job at or above Defendants' legitimate expectations, and at least as well as her coworkers. Before she complained of sexual harassment, Defendants never disciplined her, never counseled her about her job performance or metrics, and never told her that her position was at risk.

26. Because the work at the facility required frequent travel in and out of the office, Defendants' employees, including supervisors and their subordinates, routinely communicated with one another about work by text message on their cell phones.

**B. Young Becomes Ms. Hawthorne's Supervisor and Begins Sexually Harassing Her**

27. In or about July 2023, Defendants hired Neilson Young and placed him in the position of Ms. Hawthorne's direct supervisor.

28. Young is a man who is substantially younger than Ms. Hawthorne. He is physically large and lifts weights.

29. At all relevant times, Defendants empowered Young to take tangible employment actions against Ms. Hawthorne, including assigning her duties, approving or denying her leave requests, issuing her written discipline, and terminating her employment. Young exercised each of those powers over Ms. Hawthorne as alleged below.

30. On July 26, 2023, after work hours, Young began sending Ms. Hawthorne unprompted photographs of his body by text message. Ms. Hawthorne did not ask for, welcome, or respond to these photographs.

31. On August 1, 2023, after work hours, Young texted Ms. Hawthorne that he had a question for her and asked whether she was interested in him. Ms. Hawthorne did not respond. Young then texted her that "alcohol and boredom" would get him in trouble. Ms. Hawthorne again did not respond.

32. On August 10, 2023, Young again sent Ms. Hawthorne personal text messages asking whether she was interested in him. Ms. Hawthorne did not respond.

33. On August 15, 2023, Young sent Ms. Hawthorne additional personal text messages alluding to his earlier statements about wanting to date her, then claimed he was "just bored."

When Ms. Hawthorne did not engage, Young texted her about how "hot" it was that she worked with horses—roping horses is Ms. Hawthorne's hobby—and made clear that he found the roping sexually arousing.

34. Young's messages made Ms. Hawthorne extremely uncomfortable. Because Young was her supervisor, she also began to fear for her job if she continued to rebuff him.

35. On August 17, 2023, Young appeared agitated at work. As an ordinary workplace courtesy, Ms. Hawthorne asked him by text whether he was okay. Young replied that he was stressed and needed caffeine, and Ms. Hawthorne told him that coffee was ready in the office. Young responded: "you definitely have a great ass."

36. Young's comment was made during the workday and in front of everyone. Caught off guard by her supervisor's sexual comment and unsure how to respond, Ms. Hawthorne gave a brief, deflecting reply and went about her workday trying to avoid Young.

37. Later that workday, Young texted Ms. Hawthorne that he would be drinking that night and would be bored, warned her that he would send her pictures, and told her to make sure nobody was around when she looked at them. Uncomfortable and not knowing what to say to her supervisor, Ms. Hawthorne gave a noncommittal one-word reply.

38. That evening, Young texted Ms. Hawthorne that the "vodka was nice and cold" at his home and pool. Ms. Hawthorne replied that she was busy at home.

39. Young then sent Ms. Hawthorne a full-body nude photograph of himself openly displaying his genitals. He followed it with a photograph of his face and a photograph of his nude body in his pool, from his neck to his feet, again displaying his genitals. He continued to text Hawthorne to no avail.

40. Ms. Hawthorne was shocked and disturbed. She did not respond, and she did not text Young again until August 30, 2023.

41. Ms. Hawthorne never solicited, invited, encouraged, or reciprocated any of Young's sexual advances, comments, or photographs. Each was unwelcome. Ms. Hawthorne made her lack of interest known to Young, including by repeatedly declining to respond to his propositions.

**C. After Ms. Hawthorne Rejects His Advances, Young Turns Hostile**

42. Beginning in or about late August and September 2023, after Ms. Hawthorne failed to reciprocate his advances, Young became hostile toward her in every aspect of her employment, repeatedly reprimanding her and verbally abusing her.

43. By December 2023, Young had begun cursing at Ms. Hawthorne in front of her coworkers in the office. This conduct occurred repeatedly and became a habit.

44. Before Ms. Hawthorne rejected his advances, Young did not treat her with hostility. Young treated Ms. Hawthorne's male coworkers, and the younger women who had not rejected him, with respect.

45. Young regularly stared at Ms. Hawthorne in a manner she reasonably perceived as menacing, knowing that she possessed the nude photographs and sexual text messages he had sent her. Given Young's position of authority over her and his size, Ms. Hawthorne was afraid of him.

46. Ms. Hawthorne's coworkers witnessed Young's hostile and harassing conduct toward her. Ms. Hawthorne decided to complain because Young's hostile actions, including comments and extra assignments outside her scope of work, remained pervasive.

**D. Ms. Hawthorne Complains, and Defendants Inform Her Harasser Instead of Investigating**

47. Upon information and belief, Defendants are a government contractor and purported to maintain an "open-door" policy for employee concerns. Defendants, however, never trained Ms. Hawthorne on any anti-discrimination or anti-harassment policy or complaint procedure, and never informed her how, or to whom, to complain when her own supervisor was the harasser.

48. Ms. Hawthorne nonetheless complained about Young's conduct up her chain of command and to Defendants' Human Resources Department. Between January and June 2024, Ms. Hawthorne submitted at least three written complaints to Human Resources Manager Anna Wright reporting Young's sexual advances and propositions, his hostility toward her, her difficulties working under him, and her fear of him. She also verbally complained to Defendants' Human Resources Department multiple times about the harassment, discrimination, and retaliation – the complaints continued through her termination discussed below.

49. Defendants did not open an investigation into any of Ms. Hawthorne's complaints and took no corrective action against Young.

50. Instead, Wright and Defendants' Human Resources Department notified Young of Ms. Hawthorne's complaints and permitted You to review and respond to the complaint. In contrast, HR never permitted Ms. Hawthorne any opportunity to be heard.

51. Each time Young learned of one of Ms. Hawthorne's complaints, he reprimanded her or cursed at her in front of her coworkers.

52. Ms. Hawthorne's coworker, Tiana Hayes, also submitted a complaint to Defendants' Human Resources Department on Ms. Hawthorne's behalf, reporting Young's

harassment of Ms. Hawthorne and the hostile work environment he had created. Defendants took no action on that complaint either.

53. Upon information and belief, other employees also complained to Defendants' Human Resources Department about Young's abusive conduct and his treatment of women on his team. Defendants were therefore on notice of Young's pattern of conduct and failed to take prompt or effective remedial action.

### E. Young Retaliates, and Defendants Terminate Ms. Hawthorne Under the Guise of a "Layoff"

54. Beginning in January 2024, during the same period in which Ms. Hawthorne was complaining to Human Resources, Young directed Ms. Hawthorne to train a 25-year-old female employee to perform all of the tasks Defendants had assigned to her, including the records she managed and the aircraft to which she was assigned.

55. Neither Young nor anyone else at Defendants told Ms. Hawthorne why she was required to train another employee in all of her duties or indicated that her position was at risk.

56. Young micromanaged Ms. Hawthorne's training of the younger employee throughout the first half of 2024.

57. In April 2024, Young issued Ms. Hawthorne a written disciplinary action for submitting a request to use her leave time. Upon information and belief, this was the first written discipline Ms. Hawthorne had received in nearly ten years of employment.

58. On June 18, 2024, Young terminated Ms. Hawthorne's employment in front of her coworkers while belittling her for his pleasure.

59. Defendants and Young told Ms. Hawthorne that she was being terminated as part of a layoff.

60. Defendants' stated reason was false and a pretext for discrimination and retaliation. Among other things:

(a) Ms. Hawthorne's position was not eliminated; the 25-year-old employee she had been required to train took over her position and all of the accounts she had managed;

(b) upon information and belief, none of Ms. Hawthorne's younger coworkers was laid off;

(c) Ms. Hawthorne had more seniority than the younger coworkers who were retained;

(d) Ms. Hawthorne had never been counseled about her job performance or metrics, and at the time of her termination she had performed all tasks assigned to her without issue;

(e) the termination was carried out by Young—the supervisor whom Ms. Hawthorne had repeatedly rejected and about whom she had repeatedly complained—after Defendants had informed him of her complaints; and

(f) the termination occurred within months, and in some instances weeks, of Ms. Hawthorne's written complaints, and after she had spent nearly six months being required to train her own replacement.

(g) Mr. Young participated and recommended Hawthorne's termination despite the fact she had complained to HR about her discrimination, sexual, and hostile actions taken against her leading up to her termination.

61. Young played a direct role in Defendants' failure to respond to Ms. Hawthorne's complaints and in the decision to terminate her employment. Upon information and belief,

Defendants' management and Human Resources Department approved and ratified Young's decision with knowledge of Ms. Hawthorne's complaints.

62. Defendants acted with malice or with reckless indifference to Ms. Hawthorne's federally protected rights and did not make good faith efforts to comply with Title VII, including by failing to train employees on their anti-harassment policies, failing to investigate repeated complaints of sexual harassment by a supervisor, and disclosing those complaints to the accused harasser.

**F. Ms. Hawthorne's Damages**

63. As a direct and proximate result of Defendants' unlawful conduct, Ms. Hawthorne has suffered and continues to suffer lost wages, lost benefits, and lost retirement contributions.

64. To meet her basic expenses after her termination, Ms. Hawthorne was forced to cash out her retirement savings, incurring an early-withdrawal penalty and tax consequences.

65. Ms. Hawthorne has also suffered and continues to suffer severe emotional distress, mental anguish, anxiety, humiliation, sleep disturbances, fear for her safety, and loss of enjoyment of life. She sought therapy as a result of Defendants' conduct but can no longer afford it.

66. The aviation industry in which Ms. Hawthorne has built her career is small, and her fear of encountering Young at industry events and conventions has impaired her ability to pursue her livelihood.

67. Ms. Hawthorne has diligently sought to mitigate her damages. Since her termination, she has been able to obtain only intermittent, rotational work that requires extended travel away from home and provides lower and less stable compensation than her position with Defendants.

68. Upon information and belief, Young and the Human Resources personnel responsible for the conduct alleged herein remain employed by Defendants, rendering reinstatement infeasible. At all times, Defendants ratified, approved, and enabled Young's actions against Hawthorne.

## VI. CLAIMS FOR RELIEF

### COUNT I
### SEXUAL HARASSMENT — QUID PRO QUO / TANGIBLE EMPLOYMENT ACTION

Title VII, 42 U.S.C. § 2000e-2(a)
(Against All Defendants)

69. Plaintiff realleges and incorporates by reference paragraphs 1 through 68 above as if fully set forth herein.

70. Plaintiff is a woman and a member of a protected class.

71. Young, Plaintiff's supervisor, subjected Plaintiff to unwelcome sexual advances, requests for a sexual or romantic relationship, sexual comments about her body, and unsolicited nude photographs.

72. Young's conduct was directed at Plaintiff because of her sex.

73. Plaintiff's refusal to submit to Young's sexual advances resulted in tangible employment actions against her, including written discipline, being required to train her replacement in all of her job duties, and the termination of her employment.

74. Because Young's harassment culminated in tangible employment actions taken by Young in his capacity as Plaintiff's supervisor, Defendants are vicariously liable for that harassment, and the affirmative defense recognized in *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998), is unavailable.

75. Defendants acted with malice or with reckless indifference to Plaintiff's federally protected rights.

76. As a direct and proximate result, Plaintiff has suffered and continues to suffer the damages described above in paragraphs 63-68.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendants, jointly and severally, on this Count and award the relief requested in Section VII below.

**COUNT II**
**SEXUAL HARASSMENT — HOSTILE WORK ENVIRONMENT**
Title VII, 42 U.S.C. § 2000e-2(a)
(Against All Defendants)

77. Plaintiff realleges and incorporates by reference paragraphs 1 through 68 above as if fully set forth herein.

78. Plaintiff is a woman and a member of a protected class.

79. Plaintiff was subjected to unwelcome sexual harassment by Young, including repeated propositions, sexual comments about her body, sexually explicit messages, and nude photographs displaying his genitals, followed by months of hostility, public berating, cursing, and intimidation after she rejected him and after she complained.

80. The harassment was based on Plaintiff's sex and she complained multiple times to Defendants about the harassment during her employment and continuing through her termination.

81. The harassment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and to create a discriminatorily abusive working environment. The conduct was physically threatening and humiliating rather than a mere offensive utterance; it was frequent and persisted from July 2023 until Plaintiff's termination on June 18, 2024; it was committed by Plaintiff's direct supervisor; and it unreasonably interfered with Plaintiff's work performance.

82. Plaintiff subjectively perceived the environment as hostile and abusive, and a reasonable person in Plaintiff's position would have perceived it as hostile and abusive.

83. Defendants are vicariously liable for the hostile work environment because it was created by Plaintiff's supervisor and culminated in tangible employment actions, including the termination of her employment.

84. In the alternative, Defendants cannot establish the *Faragher/Ellerth* affirmative defense because Defendants did not exercise reasonable care to prevent and promptly correct sexually harassing behavior—including by failing to train Plaintiff on any anti-harassment policy or complaint procedure, failing to investigate her complaints or the complaint made on her behalf, and disclosing her complaints to the harasser—and because Plaintiff did not unreasonably fail to take advantage of any preventive or corrective opportunities, having complained repeatedly up her chain of command and to Human Resources.

85. In the further alternative, Defendants are directly liable because they knew of the harassment through Plaintiff's complaints, the complaint of Tiana Hayes, and other complaints regarding Young, and failed to take prompt and appropriate remedial action.

86. Defendants acted with malice or with reckless indifference to Plaintiff's federally protected rights.

87. As a direct and proximate result, Plaintiff has suffered the damages described above.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendants, jointly and severally, on this Count and award the relief requested in Section VII below.

**COUNT III**
**SEX DISCRIMINATION — DISPARATE TREATMENT**
Title VII, 42 U.S.C. §§ 2000e-2(a)(1) and 2000e-2(m)
(Against All Defendants)

88. Plaintiff realleges and incorporates by reference paragraphs 1 through 68 above as if fully set forth herein.

89. Plaintiff is a woman and a member of a protected class, and she was qualified for the position she had held for nearly ten years.

90. Defendants subjected Plaintiff to adverse employment actions affecting the terms, conditions, and privileges of her employment, including written discipline, being required to train her replacement in all of her job duties, and the termination of her employment.

91. Defendants took these actions because of Plaintiff's sex, including because Plaintiff, a woman, rejected the sexual advances of her male supervisor. Young did not subject Plaintiff's male coworkers to sexual advances or to the hostility, discipline, and termination that followed Plaintiff's rejection of those advances, and he treated them with respect.

92. Defendants' stated reason for terminating Plaintiff—a layoff—is false and a pretext for discrimination. The evidence, taken as a whole, presents a convincing mosaic of circumstantial evidence from which a reasonable jury could infer intentional sex discrimination.

93. In the alternative, Plaintiff's sex was a motivating factor in Defendants' adverse employment actions, even if other factors also motivated those actions. 42 U.S.C. § 2000e-2(m).

94. Defendants acted with malice or with reckless indifference to Plaintiff's federally protected rights.

95. As a direct and proximate result, Plaintiff has suffered the damages described above.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendants, jointly and severally, on this Count and award the relief requested in Section VII below.

**COUNT IV**
**RETALIATION**
Title VII, 42 U.S.C. § 2000e-3(a)
(Against All Defendants)

96. Plaintiff realleges and incorporates by reference paragraphs 1 through 68 above as if fully set forth herein.

97. Plaintiff engaged in statutorily protected activity by opposing practices made unlawful by Title VII, including by complaining up her chain of command and submitting at least three written complaints to Defendants' Human Resources Manager reporting Young's sexual harassment and the hostile work environment he created.

98. Defendants, including Young, knew of Plaintiff's protected activity. Defendants' Human Resources Department informed Young of each of Plaintiff's complaints and permitted him to review and respond to them. Defendants also knew of the complaint Tiana Hayes submitted on Plaintiff's behalf.

99. After and because of Plaintiff's protected activity, Defendants subjected Plaintiff to materially adverse actions that would dissuade a reasonable worker from making or supporting a charge of discrimination, including: (a) public reprimands and cursing in front of her coworkers each time Young learned of a complaint; (b) a written disciplinary action in April 2024 for requesting leave; (c) being required to train her replacement in all of her job duties; and (d) the termination of her employment on June 18, 2024.

100. There is a causal connection between Plaintiff's protected activity and the adverse actions, as shown by, among other things, the decisionmaker's actual knowledge of each

complaint, the pattern of reprimands immediately following each complaint, the close temporal proximity between Plaintiff's complaints and her discipline and termination, and the falsity of Defendants' stated reason for the termination. But for Plaintiff's protected activity, Defendants would not have taken these actions.

101. Defendants acted with malice or with reckless indifference to Plaintiff's federally protected rights.

102. As a direct and proximate result, Plaintiff has suffered the damages described above.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendants, jointly and severally, on this Count and award the relief requested in Section VII below.

**COUNT V**
**AGE DISCRIMINATION**
ADEA, 29 U.S.C. § 623(a)
(Against All Defendants)

103. Plaintiff realleges and incorporates by reference paragraphs 1 through 68 above as if fully set forth herein.

104. At the time of her termination, Plaintiff was 52 years old and within the class of persons protected by the ADEA, 29 U.S.C. § 631(a).

105. Plaintiff was qualified for the position of Quality Records Clerk, which she had held for nearly ten years while meeting or exceeding Defendants' legitimate expectations.

106. Defendants terminated Plaintiff's employment on June 18, 2024.

107. Defendants replaced Plaintiff with a substantially younger employee—a 25-year-old whom Defendants required Plaintiff to train in all of her duties—who assumed Plaintiff's

position and accounts. Upon information and belief, Defendants retained all of Plaintiff's younger, less senior coworkers in the purported layoff.

108. Defendants' stated reason for the termination—a layoff—is false and a pretext for age discrimination. Plaintiff's age was the but-for cause of Defendants' decision to select her for termination.

109. Pursuant to Federal Rule of Civil Procedure 8(d)(2)–(3), this Count is pleaded in the alternative to Counts I through IV to the extent the causation standards applicable to those claims are inconsistent with the but-for causation standard applicable under the ADEA.

110. Defendants' violation of the ADEA was willful. Defendants knew or showed reckless disregard for whether their conduct was prohibited by the ADEA, entitling Plaintiff to liquidated damages under 29 U.S.C. § 626(b).

111. As a direct and proximate result, Plaintiff has suffered lost wages, lost benefits, and other economic losses.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendants, jointly and severally, on this Count and award the relief requested in Section VII below.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Stephanie Hawthorne respectfully requests that this Court assume jurisdiction over this action and, after trial by jury, enter judgment in her favor and against Defendants, jointly and severally, granting the following relief:

(a) A declaratory judgment that Defendants' practices described herein violate Title VII and the ADEA;

(b) A permanent injunction enjoining Defendants, their officers, agents, employees, and successors from engaging in sexual harassment, sex discrimination, age discrimination, and retaliation, and requiring Defendants to adopt, disseminate, and train employees and supervisors on effective anti-harassment and anti-retaliation policies, including a complaint procedure that does not route complaints to, or disclose them to, the accused harasser;

(c) Back pay, including lost wages, lost benefits, and lost retirement contributions, with prejudgment interest;

(d) Front pay in lieu of reinstatement

(e) Consequential and Compensatory damages, including for past and future pecuniary losses (including the penalties and tax consequences of her forced retirement withdrawal, therapy and medical expenses, and job-search expenses), emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

(f) Punitive damages under Title VII and 42 U.S.C. § 1981a;

(g) Liquidated damages under 29 U.S.C. § 626(b) in an amount equal to Plaintiff's back pay and lost benefits;

(h) Pre-judgment and post-judgment interest at the maximum rate allowed by law;

(i) Reasonable attorneys' fees, expert fees, and costs under Title VII - 42 U.S.C. § 2000e-5(k), 42 U.S.C. § 1981a, the ADEA, and 29 U.S.C. § 626(b);

(j) Such other and further legal and equitable relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 30th day of October, 2026.

*/s/ D. Patrick Evans*
D. Patrick Evans (EVA048)
ASB-3209-R67G
Attorney for the Plaintiff
The Evans Law Firm, P.C.
1736 Oxmoor Road, Suite 101
Birmingham, Alabama 35209
Telephone: (205) 870-1970
Fax: (205) 870-7763
E-Mail: dpevans@evanslawpc.com
*Attorney for Plaintiff Stephanie Hawthorne*

**DEFENDANTS TO BE SERVED BY CERTIFIED MAIL AS FOLLOWS:**

**OAS Acquisition, LLC d/b/a Arista Aviation Services Group, LLC**
Registered Agent: CT Corporation System
Registered Address: 2 North Jackson Street, Suite 605
Montgomery, AL 36104

**Arista Aviation Services, LLC d/b/a United Aero Group**
Registered Agent: Cogency Global, Inc.
Registered Address: 2 North Jackson Street, Suite 605
Montgomery, AL 36104

s/ D. Patrick Evans
Of Counsel